UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                 Case No. 24-CR-83

DOMINIQUE DICKERSON,

    Defendant.

**DECISION AND ORDER ON DEFENDANT'S MOTION FOR *FRANKS* HEARING**

On April 23, 2024, a grand jury sitting in the Eastern District of Wisconsin returned a four-count indictment against Dominique T. Dickerson charging him with two Hobbs Act robberies, in violation of 18 U.S.C. § 1951(a); discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and possessing ammunition as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (Docket # 1.) Dickerson was arraigned on the charges and entered pleas of not guilty. (Docket # 5.) Jury trial before the Honorable Brett H. Ludwig will be scheduled after resolution of pretrial motions.

Dickerson seeks to suppress evidence obtained pursuant to two state search warrants issued on March 4, 2024 and a federal search warrant issued on March 12, 2024. (Docket # 18.) Dickerson argues that the affidavits in support of the search warrants contain misleading and/or false information and without the misleading and false information, the warrants lack probable cause. Consequently, he seeks an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), commonly referred to as a *Franks* hearing, to determine whether there has been a *Franks* violation warranting suppression of the evidence seized pursuant to the

three warrants. The government opposes Dickerson's request. For the reasons explained below, Dickerson's request for a *Franks* hearing and for suppression of the fruits of the warrants is denied.

## BACKGROUND

On March 4, 2024, Detective Michael Slomczewski applied for and was granted two state search warrants for two separate residences connected to Dickerson in the City of Milwaukee—5849 N. 74th Street, the residence Dickerson shared with the mother of his child; and 8990 N. 70th Street, the residence of Dickerson's mother. (Docket # 20-5; Docket # 20-6.)

The averments in both affidavits are largely the same; thus, I cite to the 74th Street warrant affidavit for ease of reference. Slomczewski avers that on January 3, 2024, an armed robbery occurred at the Dollar Tree store at 8207 W. Brown Deer Road in Milwaukee. (Search Warrant Aff. ¶ 4, Docket # 20-5.) The robbery took place at approximately 12:26 p.m. (*Id.*) An employee described the suspect as a black male, approximately 5'7"-5'9" tall, slim build, and a medium-dark complexion in his early to mid-20s. (*Id.* ¶ 5.) The employee stated that the suspect wore a black mask that was covering the lower portion of his face, a burgundy winter hat, and a black jacket with a hood. (*Id.*) Slomczewski states that surveillance video from the store was recovered and depicts the suspect wearing a maroon and multicolored winter hat with a Milwaukee Brewers emblem on the front, a blue mask with a gray Nike Swoosh on the left side of the mask, a blue jacket with white lettering on the left chest area, black pants, and gray shoes. (*Id.* ¶ 7.) A still photograph from the surveillance video is included in the affidavit.

2

Slomczewski further avers that on January 4, 2024, an armed robbery occurred at the Family Dollar store at 3334 N. Holton Street in Milwaukee at approximately 10:44 a.m. (*Id.* ¶ 8.) An employee described the suspect as a black male in his 30s, 5'06", and approximately 140-150 lbs; wearing a face mask, a Brewers multicolored winter cap, dark pants, tennis shoes, and carrying a black semiautomatic handgun. (*Id.* ¶ 9.) Video surveillance footage from the store was recovered that depicts the suspect wearing the same maroon and multicolored winter hat with a Milwaukee Brewers emblem as the suspect in the Dollar Tree robbery on January 3. (*Id.* ¶ 11.) A still photograph from the surveillance video is included in the affidavit. Additional surveillance was obtained as the suspect passed a different business after fleeing the Family Dollar, and this footage depicts the suspect wearing the same Columbia jacket and dark mask with a Nike Swoosh as the suspect in the Dollar Tree robbery. (*Id.* ¶ 12.) A photograph from this surveillance video is also included in the affidavit.

Slomczewski avers that in an attempt to identify the suspect, Detective Martin Keck wrote two search warrants (an area and tower dump) for cell phone data from four phone carriers. (*Id.* ¶ 13.) Slomczewski states that the warrant's scope was narrowed by date, time, and small radius around the two robbery locations and the data obtained from the warrants was analyzed by Keck. Slomczewski avers that "Upon reviewing the T-Mobile return, one device (414-748-5715 IMSI 310260434584225 IMEI 353555375590100) was consistent with being located at both robberies at the time of the offenses." (*Id.*)

Slomczewski further avers that on January 3, 2024, the phone number of 414-748-5715 began connecting with a cell site in the area of the Dollar Tree on Brown Deer Road, with the first recording of the device connecting to a cell site in the area of the Dollar Tree at 11:57 a.m. (*Id.* ¶ 14.) Slomczewski avers that the phone continued to connect with the cell sites in

3

the area of the Dollar Tree robbery until 12:35 p.m., which was after the robbery occurred. (*Id.*) He states that at 12:35 p.m., the cell phone no longer connected with cell sites in the area of the Dollar Tree. (*Id.*) Slomczewski states that the "T-Mobile records further reveal that between 12:28 p.m.-12:29 p.m., the device's records reported a distance of 0.73 miles from the cell site it was connecting to. This is significant because the cell site that the cell phone 414-748-5715 was connecting to is approximately 0.73 miles aways from the Dollar Tree. Additionally, at 12:30 p.m., the cell site data showed the device moved to the south away from the Dollar Tree." (*Id.*)

Slomczewski avers that on January 4, 2024, the 414-748-5715 phone number began connecting with a cell site in the area of the Family Dollar on Holton Street at 10:31 a.m. (*Id.* ¶ 15.) He states that the device continued to connect to a cell site in the area of the Family Dollar until 10:53 a.m., which was after the robbery of the Family Dollar occurred. (*Id.*) Slomczewski avers that the 414-748-5715 number belongs to Dickerson and that Dickerson "matches" the physical description of the suspect in the two armed robberies, in that he is 5'3" tall and weighs approximately 150 pounds. (*Id.* ¶ 16.)

Slomczewski states that Department of Transportation records showed that Dickerson resides at 5849 N. 74th Street in Milwaukee (*id.*) and surveillance conducted at the address showed a black 2017 Chevy Cruze with no widow tint and blacked out hubcaps, which was registered to Dickerson (*id.* ¶ 20). Slomczewski states that further review of surveillance video from January 4 was conducted and video from Metal Forms Corporation on Booth Street showed a black Chevy Cruze with no window tint and blacked out hubcaps traveling east on Concordia Avenue at 10:31 a.m. prior to the robbery, turn southbound on Booth Street, then performed a "suspicious maneuver" that is described as an attempt to park in-between two

4

cars, stop on an angle, and reverse out of the spot. (*Id.* ¶ 21.) Slomczewski avers that the vehicle continues southbound on Booth Street, then westbound on Auer Avenue. (*Id.*) Slomczewski states that the vehicle's arrival and direction of travel is consistent with the identified device's location and that the vehicle appears to match Dickerson's. (*Id.*) Slomczewski states that it "is also consistent that the Chevy Cruze arrived in the area of E. Concordia [Avenue] and N. Booth [Street] at the same time the cell phone 414-748-5717 began to connect with the cell sites in the area." (*Id.*)

On March 12, 2025, FBI Special Agent Kevin Kaiser applied for and received a federal search warrant for Dickerson's identification and subscriber information from T-Mobile and a longer period of location information. (Search Warrant Aff., Docket # 20-8.) Kaiser's affidavit relies on the two state search warrants previously obtained for its statements establishing probable cause. (*Id.* ¶¶ 13–17.)

## ANALYSIS

Dickerson argues that the March 4 search warrants contained material misrepresentations and omissions that warrant a *Franks* hearing. Specifically, he argues that law enforcement falsely represented the contents of the data obtained to make a case for probable cause. (Docket # 18 at 10–11.) Dickerson further argues that the fruits of the warrants, including the federal warrant, should be suppressed. (*Id.* at 22.)

    1.    *Legal Standard*

"A defendant is entitled to a *Franks* hearing—an evidentiary hearing regarding the veracity of information included in a search warrant application—if he can make a substantial preliminary showing that: (1) the warrant affidavit contained false statements, (2) these false statements were made intentionally or with reckless disregard for the truth, and (3) the false

5

statements were material to the finding of probable cause." *United States v. Sanford*, 35 F.4th 595, 597 (7th Cir. 2022) (internal quotations and citations omitted). This standard also applies when an affidavit is challenged because facts were omitted. *See, e.g., United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984). In other words, to be entitled to a *Franks* hearing based on omissions in a search warrant affidavit, the defendant must show that the omitted facts were material—"that is, if the fact[s] were included, the affidavit would not support a finding of probable cause." *Id*. If a defendant successfully makes a "substantial preliminary showing," that showing does not necessarily entitle the defendant to a favorable finding on the merits, but it entitles the defendant to a hearing where he must prove falsity or recklessness (as well as materiality) by a preponderance of the evidence. *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013).

"*Franks* makes it clear that affidavits supporting a search warrant are presumed valid, and that the 'substantial preliminary showing' that must be made to entitle the defendant to an evidentiary hearing must focus on the state of mind of the warrant affiant," i.e., the law enforcement officer who sought the search warrant. *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) (citing *Franks*, 438 U.S. at 171). The inquiry is "not whether the affidavit contains a false statement, but whether the affiant knew or should have known that a statement was false." *United States v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009) (citing *Jones*, 208 F.3d at 603). Consequently, "[t]he defendant must offer evidence showing either that the warrant affiant lied or that the warrant affiant recklessly disregarded the truth because he 'in fact entertained serious doubts as to the truth of his allegations' or had 'obvious reasons to doubt the veracity of the allegations.'" *Jones*, 208 F.3d at 607 (quoting *Williams*, 737 F.3d at 602). To meet this "substantial" burden, the defendant must make allegations, accompanied

6

by an offer of proof, that are "more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. Accordingly, "*Franks* hearings are rarely required." *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009).

   *2.    Application to this Case*

Dickerson challenges several specific averments in Detective Slomczewski's warrant affidavit relating to the accuracy of the cell phone's purported location and the identification of Dickerson's vehicle from surveillance footage. I will address each in turn.

       2.1    Representations Regarding Location of Cell Phone

Slomczewski relies on several pieces of information regarding Dickerson's cell site location information ("CSLI") to establish probable cause to search two residences associated with Dickerson. The relevant Timing Advance warrant and tower dump order provided data for specific one-hour timeframes surrounding each robbery within specific geographic parameters. Slomczewski does not include in his affidavit that the information produced from four cellular providers indicated that 133 devices were captured at both incident locations within the stated parameters of the Timing Advance warrant and the tower dump order. Instead, Slomczewski avers that Detective Keck analyzed the data obtained and upon reviewing the T-Mobile data, one device, which was later identified as Dickerson's, "was consistent with being located at both robberies at the time of the offenses." (Search Warrant Aff. ¶ 13.)

Dickerson notes that the general location data received pursuant to the tower dump order and Timing Advance warrant did not exclude Dickerson's phone as being present at the time of the robberies; however, he argues that the same holds true for the other 132 devices that fell within the search parameters. (Docket # 29 at 3.) Thus, he argues that Slomczewski

7

falsely stated that only "one device" was consistent with being at both locations at the time of the robberies and omitted that there were 133 devices in total that met the time-and-place parameters set by law enforcement. (Docket # 18 at 13.)

The government counters that Dickerson conflates two different data sets. The government argues that the 133 devices represent the total number of devices common to both one-hour windows of data obtained by law enforcement from the tower dump data and the Timing Advance data, whereas Slomczewski was referring to a more specific data set created after Detective Keck analyzed the results that put one device at both robberies *at the time* of the offenses, i.e., approximately 12:26 p.m. on January 3 and approximately 10:44 a.m. on January 4. (*Id.* at 33–34.) The government argues that Slomczewski makes this clear in the subsequent paragraphs of his affidavit, where he details when Dickerson's phone first began connecting to towers in the area of each robbery and when it stopped connecting to towers in each area. (*Id.* at 35.) Dickerson replies that Slomczewski's affidavit places Dickerson's phone, and only Dickerson's phone, at both robbery locations at the time of the robberies, when the CSLI at issue cannot provide a phone's precise location.

Dickerson likens Slomczewski's affidavit to the affidavit at issue in *United States v. Merced*, No. 21-cr-241, 2023 WL 2140729 (E.D. Wis. Feb. 21, 2023). In *Merced*, the district court determined that the affidavit contained a false statement, specifically, that location data (i.e., E-911 data) from an individual's cellular device disclosed that this individual made reoccurring trips to the defendant's residence. *Id.* at *4. The court found that this statement was "simply untrue" because "E-911 data, on its own, is not even capable of pinpointing an individual's location with such precision." *Id.* The court concluded that the evidence merely showed the individual was within the general vicinity of the defendant's home and thus did

8

not support that the individual made reoccurring trips to the defendant's residence. *Id.* The court nonetheless upheld the denial of a *Franks* hearing, finding that even excising the "bunk location data," the affidavit still supported issuance of the warrant. *Id.*

Dickerson argues that as in *Merced*, Slomczewski's affidavit places Dickerson's phone at the robbery locations, which the CSLI data is incapable of doing. (Docket # 18 at 15.) I do not read Slomczewski's affidavit as making the definitive statement Dickerson asserts. Slomczewski avers that Dickerson's device was *consistent* with being located at both robberies at the time of the offenses (Search Warrant Aff. ¶ 13), which he explains by stating that Dickerson's phone connected to a cell site in the area of the Dollar Tree on January 3 at 11:57 a.m. and stopped connecting at 12:35 p.m. (*Id.* ¶ 14.) Again, the Dollar Tree robbery occurred at about 12:26 p.m. (*Id.* ¶ 4.) Slomczewski avers that T-Mobile's records showed that between 12:28 p.m. and 12:29 p.m., Dickerson's device was reported at a distance of 0.73 miles from the cell site it was connecting to and the cell site is located approximately 0.73 miles away from the Dollar Tree. (*Id.*)

Thus, from this data, Slomczewski is inviting the reviewing judge to infer that Dickerson was probably at or near the Dollar Tree at approximately the same time the robbery occurred. The reviewing judge is permitted to draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists. *See United States v. Prideaux-Wentz*, 543 F.3d 954, 961 (7th Cir. 2008). Furthermore, probable cause is based on probabilities and "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Bullock*, 632 F.3d 1004, 1022 (7th Cir. 2011) (internal quotation and citation omitted). While Dickerson challenges the accuracy of T-Mobile's Timing Advance records in

9

general (Affidavit of Eric M. Grabski ¶¶ 20–22, Docket # 20-4), he presents no evidence that T-Mobile's Timing Advance records are incapable of performing the distance from tower calculation, or that the data in this instance was incorrect and, more importantly, that Slomczewski was aware it was incorrect.

Nor does Dickerson present evidence that multiple phones were located in close proximity to the Dollar Tree at approximately the same time the robbery occurred. Rather, the 133 phones to which he refers were located anywhere within the entire geographic area provided between 11:55 a.m. and 12:55 p.m. on January 3. Thus, even if Slomczewski had included this additional information regarding the 133 phones, it would not negate probable cause as the affidavit provides additional evidence, such as the distance from tower data, connecting Dickerson's phone to the robberies.

Dickerson further argues that Slomczewski makes false statements regarding CSLI showing precise location information and direction of travel. (Docket # 29 at 5–6.) In paragraph fourteen, Slomczewski avers that the "cell site data showed the device moved to the south" and in paragraph twenty-one, he states that the surveillance video shows that Dickerson's alleged vehicle was traveling in a direction consistent with the device's location. As to paragraph twenty-one, Slomczewski avers that the vehicle arrived in the area of E. Concordia Avenue and N. Booth Street at the same time the cell phone began to connect with the cell sites in the area, and that the device's location was consistent with the vehicle's arrival and direction of travel. (Search Warrant Aff. ¶ 21.) Again, I do not read Slomczewski's averment as definitively stating the cell phone was precisely at that intersection or moving in a specific direction. Rather, Slomczewski states that the cell phone was connecting with cell sites in the area of that intersection at the same time the vehicle arrived in the area. As to

10

paragraph fourteen, even assuming that the statement that the device moved south was excised from the warrant, it would not defeat probable cause and thus is not material. As such, a *Franks* hearing is not warranted on these bases.

        2.2        Representations Regarding Surveillance Footage

Lastly, Dickerson challenges Slomczewski's averment in paragraph twenty-one of the affidavit that the surveillance video "depicts a black Chevy Cruze, no window tint, blacked out hubcaps," and that this vehicle "appears to match" Dickerson's vehicle. Dickerson asserts that the Metal Forms surveillance video was of insufficient quality to support an unequivocal assertion that the vehicle depicted was a Chevy Cruze, much less Dickerson's Chevy Cruze. (Docket # 18 at 16.)

In his affidavit, Slomczewski averred that he reviewed surveillance footage from a neighboring business, Metal Forms Corporation, which showed at 10:31 a.m., prior to the January 4 robbery, a black Chevy Cruze with no window tint and blacked out hubcaps traveling east on E. Concordia Avenue turn southbound on Booth Street, and then perform a "suspicious maneuver." (Search Warrant Aff. ¶ 21.) Slomczewski states that the vehicle appears to match Dickerson's vehicle and the vehicle arrived in the area of E. Concordia Avenue and N. Booth Street at the same time the cell phone 414-748-5715 began to connect with the cell sites in the area. (*Id.*)

Dickerson likens Slomczewski's affidavit to the one at issue in *United States v. Miller*, No. 21-cr-132 (E.D. Wis. Sept. 28, 2021). In *Miller*, law enforcement were investigating an armed robbery. (Docket # 16 at 2 in Case No. 21-cr-132.) The affiant averred that video surveillance footage of the suspect showed a black male, approximately 45-55 years old, with a dark complexion, wearing a black knit hat, black framed corrective lenses, a black jacket

with some kind of logo on the left breast, blue jeans, and a black and gray backpack. (*Id.*) The affidavit stated that the officers canvassed area businesses and showed the suspect's photograph to a clerk at a liquor store who told the officer that he recognized the individual as a frequent customer but did not know his name. (*Id.* at 2–3.) The affidavit further stated that officers subsequently obtained post-robbery video surveillance footage showing the defendant wearing clothing articles matching the suspect's from the robbery. (*Id.* at 3.)

     In requesting a *Franks* hearing, Miller submitted an affidavit from the liquor store clerk who averred that he told law enforcement that the man in the photographed *resembled* a frequent customer, but he could not be sure because of the low quality of the image. (*Id.*) Miller further argued that the statement that his clothing matched the robber's was false. (*Id.* at 5–6.) While I determined that probable cause did not turn on the distinction between resembled and recognized, I granted a *Franks* hearing regarding the affiant's statement that in the post-robbery surveillance video from the liquor store, Miller is observed "wearing clothing articles matching the suspect's from the robbery on 4/13/21." (*Id.* at 7.) A review of the submitted images failed to show that the clothing worn on the post-robbery surveillance video matched the clothes worn by the robber because the quality of the images was not clear. (*Id.*)

     In this case, despite reviewing the Metal Forms surveillance footage multiple times, beyond seeing what appears to be a black sedan, I cannot decipher any other distinguishing features of the vehicle. (Ex. 7.) I cannot tell whether the windows are tinted, nor can I see whether the hubcaps are blacked out, as Slomczewski avers. The government argues that the video is capable of being zoomed in and reviewed with focus on the specific intersection at issue. (Docket # 24 at 43.) The government provides stills from the video that depict the vehicle closer up to demonstrate the "varied angles and lighting conditions discernible from

12

a full review of the vehicle." (*Id.* at 44, Ex. A, Docket # 24-1.) But the still photos the government provides are no clearer than the video. I cannot determine, from looking at these photographs, whether the windows are tinted or the hubcaps are blacked out. (Docket # 24-1.) And Slomczewski fails to include any photographs from the Metal Forms surveillance footage so that the issuing judge could determine for herself the accuracy of Slomczewski's description, despite including multiple still photographs from surveillance footage from the Dollar Tree, the Family Dollar, and the Coin Laundry in his affidavit. (Search Warrant Aff. ¶¶ 7, 11, 12.)

Thus, at best, the certainty of the assertion that the surveillance video "depicts a black Chevy Cruze, no window tint, blacked out hubcaps," is not evident from viewing the video. Nonetheless a *Franks* hearing is not warranted. In *Miller*, I found that there was little evidence connecting Miller to the robbery beyond the representation that he wore clothing matching that of the robber. (Docket # 16 at 6 in Case No. 21-cr-132.) In contrast, even excising the statement regarding the vehicle, Slomczewski avers that Dickerson's cell phone was connecting with cell sites in the area of the intersection of E. Concordia Avenue and N. Booth Street, in the area of the Family Dollar, at 10:31 a.m., just prior to the January 4 robbery that occurred at approximately 10:44 a.m. Dickerson's cell phone ceased connecting with cell sites in the area of the Family Dollar at 10:53 a.m., after the robbery occurred. In other words, even without the information regarding the vehicle, Dickerson's CSLI puts him in the vicinity of the Family Dollar during the relevant timeframe that the robbery occurred. Because the misleading statement regarding the vehicle is unnecessary to the probable cause determination, Dickerson is not entitled to a *Franks* hearing on this claim.

## CONCLUSION

Dickerson argues that the misstatements and omissions in Slomczewski's search warrant affidavits warrant both a *Franks* hearing and an order suppressing the fruits of the warrants. I find that Dickerson has failed to make a substantial preliminary showing that a *Franks* hearing is required. Furthermore, even if a defendant successfully makes this substantial preliminary showing, this does not necessarily entitle him to a favorable finding on the merits. Dickerson does not offer any basis, beyond his *Franks* request, to suppress the fruits of these warrants. For these reasons, Dickerson's motion for a *Franks* hearing and to suppress the evidence flowing therefrom is denied.

**NOW, THEREFORE, IT IS ORDERED** that defendant's Motion to Suppress and Request for a *Franks* Hearing (Docket # 18) is **DENIED**.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 10th day of June, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge