UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                                Case No. 24-cr-0083-bhl

DOMINIQUE DICKERSON,

        Defendant.

## ORDER

        Defendant Dominque Dickerson objects to Magistrate Judge Nancy Joseph's Report and Recommendation (Report) concluding that his motion to suppress evidence should be rejected. Dickerson also objects to the magistrate judge's denial of his request for a *Franks* hearing. For the reasons set forth below, Dickerson's objections are overruled, Magistrate Judge Joseph's Report is adopted, and her Decision and Order denying a *Franks* hearing is affirmed. Accordingly, Dickerson's motions to suppress and for a *Franks* hearing are denied.

## BACKGROUND

        On January 3, 2024, an unidentified man with a firearm robbed a Dollar Tree store on Milwaukee's far northwest side. (ECF No. 17 at 2.) The next day, a man resembling that robber, and wearing the same jacket and winter cap, robbed a Family Dollar store on Milwaukee's east side. (*Id.*) Law enforcement personnel suspected that the same man committed both robberies but were unable to identify the suspect. (*Id.*) They then pursued two different processes to obtain further information in support of their investigation.

        First, on January 5, 2024, an Assistant United States Attorney sought an order for a "tower dump," pursuant to the Stored Communications Act, 18 U.S.C. §2703(d). (ECF No. 20-1 at 1–10.) A magistrate judge granted the request on January 8, 2024, and directed various cell phone carriers to provide records related to all devices connecting with cell phone towers at and around the robbery locations for a one-hour timeframe during which the robberies were committed, including the captured devices' telephone numbers. (*Id.* at 7–10.)

Second, on January 8, 2024, an FBI Task Force Officer applied for a search warrant to obtain Timing Advance "True Call" area search records pertaining to Timing Advance location information from AT&T, T-Mobile, and U.S. Cellular. (ECF No. 20-2 at 6–7.) The magistrate judge granted the warrant, which authorized the cellular carriers to search and turnover data showing the phones that were found to be within a geographic area near each incident location and within a geofence set by law enforcement. (*Id.* at 3–5.) A detective later analyzed the resulting data and concluded that more than 44,000 devices were present in the general area and that 133 devices were present at both specific incident locations. (ECF No. 33 at 4.) The detective further determined that the data showed a T-Mobile device bearing phone number 414-748-5715, IMSI 310260434584225, and IMEI 353555375590100 was at both incident locations. (*Id.*) A report from a previous Milwaukee Police Department case, MPD #23-270-0123, linked 414-748-5715 to Dominique Dickerson. (*Id.*)

On March 4, 2024, Detective Michael Slomczewski applied for and was granted two state court search warrants for two residences connected to Dickerson and located on 70th and 74th Streets in Milwaukee. (ECF Nos. 20-5; 20-6.) In affidavits supporting his requests for the warrants, Slomczewski referred to the two prior federal searches and Detective Michael Keck's analysis of the results of the resulting data.[1] (ECF No. 20-5 at ¶13.) Slomczewski further stated that both federal warrants were narrowed in scope by date, time, and small radius around the robbery locations and that Keck's analysis had found that "one device" (bearing phone number 414-748-5715, IMSI 310260434584225, and IMEI 353555375590100) was "consistent with being located at both robberies at the time of the offenses." (*Id.*) Slomczewski further swore that, on January 4, 2024, the 414-748-5715 phone number began connecting with a cell site in the Dollar Tree area starting at 11:57 a.m. until 12:35 p.m., after the Dollar Tree robbery occurred. (*Id.* at ¶14.) And he indicated that the T-Mobile records revealed that between 12:28 p.m. and 12:29 p.m., the data reflected a distance of 0.73 miles between the cell site and the device, which matched the approximate distance from the cell site to Dollar Tree. (*Id.*) With respect to the Family Dollar robbery, Slomczewski stated that, on January 4, 2024, the 414-748-5715 phone number began connecting with a cell site in the Family Dollar area from 10:31 a.m. until 10:53 a.m., after the robbery had occurred. (*Id.* at ¶15.) Slomczewski then reported that the phone number belonged

---

[1] The assertions in both affidavits are largely the same and the Court will therefore refer solely to the 74th Street warrant, (ECF No. 20-5), for ease of reference.

to Dickerson who matched the physical description of the suspect, namely 5'3" tall and weighing approximately 150 pounds. (*Id.* at ¶16.) Slomczewski further stated that Department of Transportation records showed that Dickerson resides at 5849 N. 74th Street in Milwaukee (*id.*) and surveillance conducted at the address and at Metal Forms Corporation on Booth Street showed a black 2017 Chevy Cruze with no widow tint and blacked out hubcaps, which was registered to Dickerson (*id.* ¶20).

The state court judge granted both warrants and police conducted the searches on March 5, 2024. (ECF No. 18 at 9.) Dickerson was arrested at the 74th Street residence and subsequently confessed to both robberies and admitted to using phone number 414-748-5715. (*Id.*)

On April 23, 2024, the government filed a four-count indictment, charging Dickerson with two Hobbs Act robberies, in violation of 18 U.S.C. § 1951(a); discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and possessing ammunition as a previously conviction felon, in violation of 18 U.S.C. § 9222(g)(1) and 924(e)(1). (ECF No. 1.) After being indicted, Dickerson moved to suppress the evidence resulting from the underlying searches, arguing that the processes used by law enforcement officers to obtain the evidence against him violated his Fourth Amendment rights. (ECF No. 17.) He argues that the tower dump was a search requiring a warrant and that the Timing Advance warrant was overbroad and lacked particularity. (*Id.* at 17–22, 24–7.) He also moved for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), insisting that the affidavits filed in support of the search warrants contained misleading and/or false information and without that information no probable cause existed to support the warrants. (ECF No. 18.)

On June 10, 2025, Magistrate Judge Nancy Joseph issued a Report recommending that this Court deny the motion to suppress. (ECF No. 33.) Judge Joseph first discussed the emerging law concerning the collection of cell site location information (CSLI) through both tower dump orders and geofence warrants. (*Id.* at 6–19.) With respect to the tower dump order obtained in this case, Judge Joseph concluded that a warrant was not required because the information was obtained through the Stored Communications Act. (*Id.* at 23.) As to the Timing Advance warrant, Judge Joseph held that the warrant was not supported by probable cause because the affiant failed to allege that the suspect in the robberies used a cell phone or that the affiant knew from training and experience that people commonly carry cell phones. (*Id.* at 26.) She further found that the warrant lacked particularity because the geographic areas authorized by the warrant were overly broad.

(*Id.* at 28–29.) Despite these failings, Judge Joseph concluded that the good faith exception applied to the officer's conduct and therefore denied Dickerson's motion to suppress. (*Id.* at 31.) Judge Joseph also issued a Decision and Order denying the defendant's request for a *Franks* hearing. (ECF No. 34.)

Dickerson timely filed objections to the Report, (ECF No. 39), and the Decision, (ECF No. 40). His objections do not challenge Judge Joseph's findings regarding the tower dump or her conclusion that the Timing Advance warrant was not supported by probable cause. Instead, Dickerson objects to Judge Joseph's finding that the good faith exception applied. (ECF No. 39 at 1–6.) He argues that the warrant to obtain the Timing Advance data was "so facially deficient in particularizing its scope that the officers could not have reasonably relied upon it." (*Id.* at 5 citing ECF No. 33 at 21.) He further contends that the affidavit supporting the warrant was "so lacking in probable cause that no officer could reasonably believe the affidavit established it." (*Id.* at 5.) Dickerson further objects to Judge Joseph's denial of his request for a *Franks* hearing. (ECF No. 40.)

## STANDARD OF REVIEW

Dickerson's objection to Magistrate Judge Joseph's recommendation that his motion to suppress be denied is governed by Federal Rule of Criminal Procedure 59(b). Under the rule, parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a motion to suppress. Fed. R. Crim. P. 59(b)(2). The district judge must then review *de novo* any portions of the magistrate judge's recommendations to which a party timely objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Dickerson's challenge to the magistrate judge's denial of his request for a *Franks* hearing is governed by Rule 59(a), which governs the referral of non-dispositive matters to magistrate judges. The rule gives parties fourteen days to file objections to a magistrate judge's order, and directs the district court to "consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." *Id.*

## ANALYSIS

I.    **The Good Faith Exception Defeats Dickerson's Motion to Suppress.**

Under *United States v. Leon*, 468 U.S. 897, 920–24 (1984), evidence seized pursuant to a warrant is not subject to suppression if the executing officers' reliance on the warrant was

objectively reasonable. An officer's reliance on a warrant is reasonable where they rely in good faith on a judge's determination that probable cause existed to conduct the search. *Id.*; *United States v. Searcy*, 664 F.3d 1119, 1124 (7th Cir. 2011) ("[T]he suppression of evidence seized pursuant to a search warrant that is later declared invalid is inappropriate if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause.") The decision to seek a warrant is *prima facie* evidence that the officer was acting in good faith. *United State v. Wiley*, 475 F.3d 908, 917 (7th Cir. 2007) (citing *United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002)). To rebut this, a defendant must show that the reviewing judge "wholly abandoned his judicial role or that the officer's affidavit was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." *Id.* (citing *Koerth*, 312 F.3d at 868). Further, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921.

Dickerson argues that the warrant was "so facially deficient in particularizing its scope that the officers could not have reasonably relied on it." (ECF No. 39 at 5.) Although the Court will decline to resolve the Fourth Amendment issue, the Court notes that the warrant application was drafted by a knowledgeable and trained law enforcement officer with over sixteen years' experience, (*see* ECF No. 20-2 at 7–8) and was submitted to and approved by Magistrate Judge William Duffin. (*Id.* at 1.) As previously noted, "'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" *Leon*, 468 U.S. at 922 (quoting *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)).

The warrant required as follows:

> T-Mobile/US Cellular/AT&T shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframes(s) listed in Attachment A . . . [.]

(ECF No. 20-2 at 17.) The warrant described the data to be searched and the data to be seized, and the scope of the warrant was limited both geographically and temporally. (*See id.* at 16.) The warrant requested data during the periods of time during which the robberies occurred. And

although the warrant called for all records and other information, it explicitly excluded "the contents of communications" from the scope of the warrant. (*Id.* at 17.)

In *United States v. James*, 3 F.4th 1102 (8th Cir. 2021), the Eighth Circuit affirmed the denial of a motion to suppress evidence gathered from a series of wide-ranging tower dumps that collected ninety minutes of CSLI at each of four different locations. *Id.* at 1104. Although *James* did not indicate how many individuals' CSLI the warrants captured, any overbreadth issues did not concern the *James* panel, which found the tower dump warrants adequately particularized. *Id.* at 1106. Similar to *James*, the warrant application here sought information that was constrained both geographically and temporally to the robberies under investigation. Even if the Court were to find that the Timing Advance warrant was insufficiently supported by probable cause or lacked particularity, the good faith exception would apply. Judge Joseph noted that "[t]he technology at issue here is rapidly changing and the case law is far from settled on the constitutionality of geofence warrants" including "how narrow a geofence perimeter should be before it does not pass constitutional muster." (ECF No. 33 at 31.)

Defendant argues that law enforcement was on notice that the area search in this case was "constitutionally dubious" and cites *United States v. Chatrie*, 590 F. Supp. 3d 901, 919–920 (E.D. Va. 2022). (ECF No. 39 at 3.) In *Chatrie*, the court concluded that the "warrant [was] invalid for lack of particularized probable cause," but that suppression was inappropriate "because the *Leon* good faith exception applie[d]." 590 F.3d at 925. The technology addressed in *Chatrie* involved Google's Location History database, a vast library of "near-exact location information for each user who opts in" providing the government with "an almost unlimited pool from which to seek location data," such that "'police need not even know in advance whether they want to follow a particular individual, or when.'" *Id.* (citing *Carpenter v. United States*, 585 U.S. 296, 312 (2018)). On appeal, the Fourth Circuit found that the defendant voluntarily exposed his location information from Google by opting in to Location History. *United States v. Chatrie,* 107 F.4th 319 (4th Cir. 2024). The Court concluded that the government did not conduct a search when it obtained CSLI through the geofence request. The Fourth Circuit granted rehearing *en banc* and subsequently affirmed the decision; however, the court could not agree on the rational for affirming, producing eight concurring opinions. *United States v. Chatrie*, 136 F.4th 100 (4th Cir. 2025) (*en banc*).

The Timing Advance data, as described in the warrant affidavit, is distinct from the type of technology in *Chatrie*, as noted by its limitations: "the information being queried is still based

on 'estimated locations' of the cellular devices by the network and is not a finite GPS location and should not be treated as such. Estimated locations can vary based on the network environment, sources of the location estimate, and any data points used by the cellular provider to calculate the location estimate." (ECF No. 20-2 ¶20.) As the affidavit states, "the distance provided in this warrant is based upon a review of the cellular network and discussion with experts in the field who have experience requesting and analyzing this information and are used to only identify those cellular accounts whose records would be consistent with being in the area of the location." (*Id.*) The affidavit justifies the warrant's broader time period because a longer period of data enables the reviewer to eliminate devices that are simply "native to the area" being analyzed, and whose movements are not consistent with the crime being investigated. (*Id.* at ¶24.)

      The Timing Advance warrant is similar to the warrant the Eighth Circuit approved in *United States v James*. As the Eighth Circuit explained, "Geographically, they covered only the cellular towers near each robbery. Temporally, the period was narrow and precise: only about 90 minutes, with exact time listed. Given these specific limitations, the warrants were 'sufficiently definite' to eliminate any confusion about what the investigators could search." *James*, 3 F.4th at 1106 (citing *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999)). In the Seventh Circuit, there appears to be a dearth of case law on this issue and the case law that does address such rapidly advancing technology is unsettled. The Court disagrees with Dickerson that law enforcement has been put "on notice" regarding the impact of geofence warrants on consequential Fourth Amendment questions. *See United States v. Zelaya-Veliz*, 94 F.4th 321, 340–41 (4th Cir. 2024) ("[I]n applying the Fourth Amendment to novel questions posed by digital technology, . . . it [is] advisable to proceed with caution . . . It is axiomatic that '[c]ourts should not punish law enforcement officers who are on the frontiers of new technology simply because they are at the beginning of a learning curve and have not yet been apprised of the preference of courts on novel questions.'") (quoting *United States v. Cawthorn*, 682 F. Supp. 3d 449, 456 (D. Md. 2023)).

      In this case, law enforcement acted pursuant to a warrant that was not so facially deficient that the executing officers could not reasonably presume it to be valid. The inquiry is "whether the officer could have reasonably believed the materials presented to the magistrate judge . . . were sufficient to establish probable cause." *See Koerth*, 312 F.3d at 869 (7th Cir. 2002). It is reasonable for law enforcement to have believed the Timing Advance warrant appropriately

authorized them to obtain the cell site data described in Attachments A and B. Dickerson's motion to suppress was properly denied because the good faith exception to the exclusionary rule applies.

II.     **Magistrate Judge Joseph Properly Denied Dickerson's Request for a *Franks* Hearing.**

To obtain an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant "must make a substantial preliminary showing of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth." *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014) (quotations omitted). Challenges to the veracity of a warrant affidavit "must be more than conclusory." *Franks*, 438 U.S. at 171. A defendant must be able to point to "specific omissions or misrepresentations in the affidavit" – mere "negligent or innocent mistakes are not enough." *United States v. Bell*, 925 F.3d 362, 372 (7th Cir. 2019 (quotation omitted). However, to secure a *Franks* hearing, a defendant faces a burden of production only: "[p]roof by a preponderance of the evidence is not required until the *Franks* hearing itself." *Glover*, 755 F.3d at 820. As the Seventh Circuit has stated, "[t]hese elements are hard to prove, and thus *Franks* hearing are rarely held." *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000); *see also United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) ("*Franks* hearing are rarely required.").

Dickerson's request for a *Franks* hearing is based on allegations that the two state search warrants were obtained only by making false or misleading representations about (1) what cell site data showed about the location of Dickerson's phone; and (2) what a surveillance video depicted. (ECF No. 18.) Judge Joseph found that no material misstatements or omissions in the Slomczewski Affidavit justified an evidentiary hearing. (ECF No. 34 at 10, 14.) Judge Joseph explained that Dickerson "presents no evidence that T-Mobile's Timing Advance records are incapable of performing the distance from tower calculations, or that the data in this instance was incorrect and, more importantly, that Slomczewski was aware it was incorrect." (*Id.* at 10.)

Dickerson objects to the Report, relying on the affidavit of Eric Grabski. According to Grabski, T-Mobile's timing advance records are not capable of the precise calculations in the Slomczewski Affidavit. (ECF No. 40 at 2.) In the challenged affidavit, Slomczewski stated that

> [R]egarding the Dollar Tree robbery on January 3, 2024, the phone number of 414-748-5715 began connecting with a cell site in the area of the Dollar Tree, 8207 W Brown Deer Rd. The first recording of the device connecting to a cell site in the area of the Dollar Tree was at 11:57 AM. This cell phone continued to connect with the cell sites in the area of the Dollar Free [sic] robbery on until 12:35

> PM which was after the robbery occurred. At 12:35 PM, the cell phone no longer connected with cell sites in the area of 8207 W Brown Deer Rd during the time period of records received. The T-Mobile records further reveal that between 12:28 PM – 12:29 PM, the device's records reported a distance of 0.73 miles from the cell site it was connecting to. This is significant because the cell site that the cell phone 414-748-5715 was connecting to is approximately 0.73 miles away from the Dollar Tree. Additionally, at 12:30pm the cell site data showed the device moved to the south away from the Dollar Tree
>
> [R]egarding the Family Dollar robbery on January 4, 2024, the phone number of 414-748-5715 began connecting with a cell site in the area of the Family Dollar, 3334 N. Holton St. The first recording of the device connecting to a cell site in the area of the Family Dollar was at 10:31 AM. The device continued to connect with cell sites in the area of the Family Dollar under 10:53 AM, which was after the armed robbery of the Family Dollar had occurred,

(ECF No. 20-5 at 6–7, ¶¶14–15.) He described particular times that the suspect device connected with cell sites "in the area" of each robbery, at the time of each robbery. (*Id.*) He described one "distance to tower" measurement described in the records. (*Id.*) On one occasion he referenced that cell site data "showed the device moving south away from the Dollar Tree." (*Id.*) Dickerson fails to make a substantial showing that any of Slomczewski's statements were false. As found by Judge Joseph, he presents no evidence that T-Mobile's Timing Advance records are incapable of performing the distance from tower calculation, or that the data in this instance was incorrect, and more importantly, that Slomczewski was aware it was incorrect. (ECF No. 34 at 10.)

In support of his argument, Dickerson offers the Grabski Affidavit and contends that this affidavit explained that T-Mobile's timing advance records are not capable of the precise calculations proffered in the Slomczewski Affidavit. (ECF No. 40 at 2.) The Grabski Affidavit however, does not comment on the accuracy of "distance to tower" calculations, whether Timing Advance data can show directional movement of a device, or whether that data can accurately log the time a device connected to a tower "in the area" of a particular incident. The Dollar Tree robbery occurred at about 12:26 p.m. (ECF No. 20-5 ¶4.) Slomczewski attests that T-Mobile's records showed that between 12:28 p.m. and 12:29 p.m., Dickerson's device was reported at a distance of 0.73 miles from the cell site it was connecting to and the cell site is approximately 0.73 miles away from the Dollar Tree. (*Id.* at ¶14.) From this data, the reviewing judge was able to

infer that Dickerson was probably at or near the Dollar Tree at approximately the same time the robbery occurred.

Dickinson also objects that Slomczewski misled the reviewing judge by stating that just "one device" was consistent with being at both robbery locations. Dickenson contends that Slomczewski improperly failed to disclose that there were 133 devices that met the time and place parameters set by law enforcement. (ECF No. 40 at 3; *see* ECF No. 20-5 at 6, ¶13.) Judge Joseph found that Dickerson failed to present evidence that those phones were located in close proximity to the robbery locations at the time of the robberies. (ECF No. 34 at 10.) Dickerson responds that this is an unfair criticism because the data does not permit him to show that these other phones were in close proximity to the robbery locations. (ECF No. 40 at 3). This critique misses the point, however, because Judge Joseph also held that even if Slomczewski had included information regarding the 133 phones, it would not negate probable cause because the affidavit provides additional evidence, such as the distance from tower data, connecting Dickerson's phone to the robberies. (ECF No. 34 at 10.) The specific timing of Dickerson's phone's connections with cell towers, and the way that those connections correlated with the known and documented movements of the robber in each incidence supported a finding of probable cause and that finding was not based solely on the presence of Dickerson's phone in the area of both robberies.

As for the surveillance video, Dickerson claims that Judge Joseph "agreed with Dickerson that the affidavit mischaracterized the contents of the video." (ECF No. 40 at 1.) Judge Joseph reviewed the video and concluded that the affidavit's "certainty . . . that the surveillance video 'depicts a black Chevy Cruze, no window tint, blacked out hubcaps,' is not evident from viewing the video." (ECF No. 34 at 13.) Even without the information regarding the vehicle, Dickerson's CSLI puts him in the vicinity of the Family Dollar during the relevant timeframe that the robbery occurred. The Court agrees with Judge Joseph that even if the statement is less than forthcoming, it is unnecessary to the probable cause determination. (*Id.* at 13.) The Court reviews Judge Joseph's denial of the defendant's motion for a *Franks* hearing for clear error and finds none. Fed. R. Crim. P. 59(a). Dickerson's motion for a *Franks* hearing is therefore denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Defendant's objections to Judge Joseph's Report and Recommendation, ECF No. 39, and **ADOPTS** the Report and Recommendation of Judge Joseph, ECF No. 33.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress, ECF No. 17, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for a *Franks* Hearing is **DENIED**.

Dated at Milwaukee, Wisconsin on September 30, 2025.

                                             s/ *Brett H. Ludwig*
                                             BRETT H. LUDWIG
                                             United States District Judge